UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ESTATE OF JACK AXELROD, C/O      :
PHYLLIS AXELROD, EXECUTRIX,    :
                                :
    Plaintiff,              :
                                :   No. 3:06CV00175(DJS)
v.                           :
                                :
ANTHONY H. FLANNERY III, OWEN   :
J. FLANNERY, AND FLANNERY     :
ENTERPRISES, LLC,           :
                                :
    Defendants.            :

## MEMORANDUM OF DECISION

Plaintiff, Estate of Jack Axelrod ("Plaintiff"), acting through Phyllis Axelrod, the executrix of the Estate, brings this action against Defendants Anthony H. Flannery III ("Anthony Flannery"), Owen J. Flannery ("Owen Flannery") (together, "Anthony and Owen Flannery"), and Flannery Enterprises, LLC ("Flannery Enterprises") (collectively, "the Defendants"), alleging common-law fraud, aiding and abetting common-law fraud, contract interference, and unfair trade practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a). Pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) , the Defendants have filed their Motion to Dismiss or, in the Alternative, Motion to Plead with Specificity **(dkt. #s 15 & 18)**. For the reasons set forth herein, the Defendants' motion is **GRANTED in part and DENIED in part**.

## I. FACTS

The following facts are alleged in the Amended Complaint. At all relevant times, Jack Axelrod ("Axelrod") was a natural person who resided in Tamarac, Florida. He is now deceased, and the executrix of his estate is Phyllis Axelrod. Anthony and Owen Flannery are natural persons who reside in East Hampton, Connecticut. Flannery Enterprises, which does business as Belltown Motors, is a Connecticut limited liability company with its principal place of business in East Hampton, Connecticut.

In 1994, Axelrod, Anthony Flannery, and Owen Flannery entered into an agreement in which: (1) Axelrod, Anthony Flannery, and Owen Flannery would form a corporation known as Tojak, Inc. ("Tojak"), which would be in the business of automotive dealing and car repair; (2) Axelrod would lend capital needed for Tojak's operation; (3) Axelrod, Anthony Flannery, and Owen Flannery would form a corporation known as John & Bob's Towing and Recovery, Inc. ("JBTR"), which would be in the business of automotive towing and recovery; and (4) Tojak and JBTR would lease space from, and pay rent to, Axelrod.

Tojak was formed on August 31, 1994 and immediately began to lease space from Axelrod at 1614 Cobalt-Portland Road, Portland, Connecticut ("1614 Cobalt-Portland Road"). Under the lease, Axelrod had an interest in this property and its fixtures. In addition, on August 31, 1994, Tojak executed a promissory note by

which Tojak promised to pay to Axelrod $68,000.00, plus interest at an annual rate of 9%. Tojak promised to make equal monthly payments of principal and interest in the amount of $861.41.

JBTR was formed on September 30, 1994 and immediately began to lease space at 1619 Cobalt-Portland Road, Portland, Connecticut ("1619 Cobalt-Portland Road"). Under the lease, Axelrod had an interest in this property and its fixtures. In addition, on September 30, 1994, JBTR executed a promissory note in which JBTR promised to pay to Axelrod $100,000.00, plus interest at an annual rate of 9%. JBTR promised to make equal monthly payments, commencing on November 1, 1994, of principal and interest in the amount of $1,266.76. On December 18, 2001, Axelrod lent JBTR an additional $50,000.00 in return for a promissory note payable on demand. In addition, sometime in 1996 or 1997, Anthony and Owen Flannery caused JBTR to lease additional space at 170 North Main Street, Middletown, Connecticut, supposedly for the purpose of operating a towing and recovery business in Middletown.

According to the Amended Complaint, Anthony and Owen Flannery were in control of the operations and finances of both Tojak and JBTR at all relevant times. The Amended Complaint states that sometime in 2001 or 2002, and continuing into 2003, Anthony and Owen Flannery "effectively consolidated" Tojak with JBTR by keeping only a single set of accounting records for both

companies, and by moving Tojak's automotive work and employees to JBTR's location. In addition, Plaintiff contends that JBTR came into possession of both 1614 Cobalt-Portland Road and 1619 Cobalt-Portland Road, and that Tojak subsequently did business as "John & Bob's Towing and Recovery."

Plaintiff alleges that in late 2000 or early 2001, Anthony and Owen Flannery, under the name of "Flannery Enterprises," leased space at 569 Main Street, Middletown, Connecticut, in order to operate a vehicle towing and recovery service known as "JB Services." Then, on April 30, 2002, Anthony and Owen Flannery organized Flannery Enterprises, which, according to the Amended Complaint, was a competitor with Tojak and JBTR.

In 2002, Anthony and Owen Flannery obtained the right to market and install Rhino Linings, a spray-on polyurethane lining used in truck beds. According to Plaintiff, this line of business was paid for by JBTR; however, Anthony and Owen Flannery subsequently transferred that line of business to Flannery Enterprises. Additionally, on January 2, 2003, Anthony and Owen Flannery, in the name of Flannery Enterprises, acquired the right to lease, with an option to buy, real property in East Hampton, Connecticut, which, according to Plaintiff, put Flannery Enterprises in direct competition with Tojak and JBTR. Anthony and Owen Flannery thereafter moved JBTR's personal property, fixtures, employees, and business to this East Hampton location.

Plaintiff contends that Anthony and Owen Flannery caused both Tojak and JBTR to default on their respective leases by not paying rent for the 1614 Cobalt-Portland Road and 1619 Cobalt-Portland Road properties.  Plaintiff further states that the actions of Anthony and Owen Flannery deprived Axelrod of the security owed to him under the leases for 1614 Cobalt-Portland Road and 1619 Cobalt-Portland Road.  Plaintiff also alleges that Anthony and Owen Flannery excluded Axelrod from the operation of Tojak and JBTR.  In addition, on January 15, 2003, Anthony and Owen Flannery filed petitions for involuntary bankruptcy of both Tojak and JBTR.  Based on the above-mentioned conduct of Anthony and Owen Flannery, Plaintiff contends that it has been injured because Tojak's and JBTR's situation became "irretrievably desperate," whereby their assets were dissipated, their sources of income were destroyed, and all prospects of future legitimate activity were ruined.

## II. DISCUSSION

Plaintiff sets forth the following claims: (1) common-law fraud; (2) aiding and abetting common-law fraud; (3) contract interference; and (4) unfair trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA").  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), the Defendants seek dismissal of all of Plaintiff's claims for relief, alleging that the applicable statutes of

limitations have expired.  In the alternative, the Defendants move pursuant to Fed. R. Civ. P. 9(b) to dismiss Plaintiff's fraud claims, alleging that Plaintiff has failed to plead fraud with particularity.  In considering the sufficiency of the Amended Complaint, the court will first analyze the sufficiency of Plaintiff's fraud claims under Rule 9(b).  The court will then conduct an analysis of the Amended Complaint pursuant to Rule 12(b)(6).

### A. RULE 9(B)

#### 1. Standard

Federal Rule of Civil Procedure 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The heightened pleading requirement of Rule 9(b) applies to claims of both fraud and aiding and abetting fraud. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-93 (2d Cir. 2006).  "Rule 9(b) is designed [to] 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from "improvident charges of wrongdoing," and to protect a defendant against the institution of a strike suit.'" Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir. 1997) (quoting O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)).

To satisfy the requirements of Rule 9(b), "plaintiffs need

not set forth their evidence in the complaint." Lomaglio Assocs. Inc. v. LBK Mktg. Corp., 892 F. Supp. 89, 94 (S.D.N.Y. 1995). Nevertheless, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2004) (internal quotation marks omitted). "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).

In addition, Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). That is to say, "while the 'actual . . . fraud alleged must be stated with particularity . . . the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity.'" Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000) (quoting Chill

v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996)). Courts apply this "more general standard to scienter for the simple reason that 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'" Id. (quoting Conn. Nat'l Bank v. Fluor Corp., 808 F.2d 957, 962 (2d Cir. 1987)). Nevertheless, "the relaxation of Rule 9(b)'s specificity requirement for scienter 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting O'Brien, 936 F.2d at 676). "In order to avoid abuse of the less stringent requirement for pleading scienter . . . plaintiffs are required to allege facts that give rise to a strong inference of fraudulent intent." Campaniello Imps., Ltd., 117 F.3d at 663 (internal quotation marks omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields, 25 F.3d at 1128.

## 2. Analysis

The Defendants contend that Plaintiff has failed to plead its fraud claims with sufficient particularity to satisfy the requirements of Rule 9(b) and ask that the court dismiss all of Plaintiff's fraud counts. Plaintiff contends that it has

sufficiently plead fraud. "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." Id. Thus, with regard to a Rule 9(b) motion to dismiss, the court must accept the facts alleged in the complaint as true. See Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir. 1986). In addition, for a Rule 9(b) analysis, the court must examine the sufficiency of the allegations of fraud contained in the complaint under the applicable state law and under Rule 9(b) itself. See Lomaglio Assocs. Inc., 892 F. Supp. at 94; Heinrich v. Goodyear Tire and Rubber Co., 532 F. Supp. 1348, 1359 (D. Md. 1982) ("In a diversity case, the elements of fraud that must be alleged in the complaint in order to state a cognizable claim are determined by reference to state law. . . . The degree of specificity required with respect to those elements, however, is a matter of federal procedure.") (citation omitted).

     a. Sufficiency Under Applicable State Law

         i. Common-Law Fraud

Plaintiff's fraud claim is brought under Connecticut common law.  Unlike the particularity requirements for pleading fraud under Rule 9(b), the Connecticut Supreme Court has stated that "[t]here is no comparable pleading requirement for proving fraud in Connecticut courts."  Conn. Nat'l Bank v. Rytmann, 241 Conn. 24, 41 n.21 (1997).  In Connecticut,

> Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . .  The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.

Weinstein v. Weinstein, 275 Conn. 671, 685 (2005) (internal quotation marks omitted).  In some circumstances, the fraudulent representation need not be an affirmative act.  "The intentional withholding of information for the purpose of inducing action has been regarded . . . as equivalent to a fraudulent misrepresentation."  Pacelli Bros. Transp., Inc. v. Pacelli, 189 Conn. 401, 407 (1983).  See IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503, 519 (D. Conn. 2005).  In addition, Connecticut courts have held that although "mere nondisclosure does not [usually] amount to fraud. . . .  Nondisclosure may . . . amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak."  Dockter v. Slowik, 91 Conn. App. 448, 458 (2005).  "An action will lie for a

fraudulent nondisclosure that causes one to continue in a course of action." Id.

The Defendants argue that the Amended Complaint does not set forth any facts demonstrating that the Defendants made fraudulent misrepresentations to Axelrod, and that absent a special duty to disclose, the Defendants' alleged silence is insufficient to meet the standard for fraudulent concealment. Although it is true that silence is usually an insufficient basis upon which to support a fraud claim, silence can be enough in situations where a defendant had a duty to disclose. "In general, partners act as trustees toward each other and toward the partnership." Konover Dev. Corp. v. Zeller, 228 Conn. 206, 218 (1994). Such business partners are "bound in a fiduciary relationship." Id. This fiduciary relationship

> is characterized by a unique degree of trust and
> confidence between the parties, one of whom has
> superior knowledge . . . and is under a duty to
> represent the interests of the other. . . . The
> superior position of the fiduciary or dominant party
> affords him great opportunity for abuse of the
> confidence reposed in him.

Id. at 219 (internal quotation marks omitted). Thus, "A knowing breach of fiduciary duty may . . ., if it satisfies the usual common law elements, amount to a fraud or misrepresentation." Hannex Corp. v. GMI, Inc., 140 F.3d 194, 206 (2d Cir. 1998). Given that the Amended Complaint asserts that a business partnership (i.e., fiduciary relationship) existed between

Axelrod and Anthony and Owen Flannery, Plaintiff may not need to allege that the Defendants made affirmative misrepresentations to Axelrod. Indeed, because of the duties owed by fiduciaries, Plaintiff may not necessarily need to allege that the Defendants affirmatively attempted to conceal their conduct, but rather that the Defendants failed to disclose to Axelrod certain material facts that they had a duty to disclose. See Falls Church Group, Ltd. v. Tyler, Cooper and Alcorn, LLP, 89 Conn. App. 459, 478 (2005).

The court therefore finds that the Amended Complaint does set forth facts that could constitute fraud under Connecticut law. The Amended Complaint states that Axelrod, Anthony Flannery, and Owen Flannery went into business together by forming Tojak and JBTR. Anthony and Owen Flannery, who ran the day-to-day operations of Tojak and JBTR, caused Tojak and JBTR to default on payments owed to Axelrod and fall into involuntary bankruptcy, thus depriving Axelrod of money owed to him and of his interests in the companies. The Amended Complaint also states that Anthony and Owen Flannery wrongfully consolidated the accounting records, assets, and employees of Tojak and JBTR in order to facilitate the bankruptcy of those companies, which occurred on January 15, 2003. The Amended Complaint further states that the conduct of Anthony and Owen Flannery demonstrates their fraudulent intent, which was to gain control of the assets

of Tojak and JBTR, deprive Axelrod of his interests in Tojak and JBTR, and operate a third company, Flannery Enterprises, without Axelrod's involvement.  In addition, the Amended Complaint states that Anthony and Owen Flannery pursued this course of conduct without notifying or informing Axelrod, who was their business partner.  The Defendants' alleged conduct, which the court must accept as true for the purposes of this motion, was knowingly wrongful and caused Axelrod to lose legal rights and interests. This alleged mishandling of the businesses and misappropriation of the businesses' assets satisfies the Connecticut law aspect of a fraud claim.  See Maruca v. Phillips, 139 Conn. 79, 81 (1952) (holding that misappropriation of partnership's funds "is fraud as a matter of law.").  Thus, the court finds that the Amended Complaint alleges facts that could constitute fraud under Connecticut law.

ii. Aiding and Abetting Common-Law Fraud

"Connecticut courts have long recognized a civil cause of action for aiding and abetting." Fink v. Magner, 988 F. Supp. 70, 72 (D. Conn. 1997); see Carney v. DeWees, 136 Conn. 256, 262 (1949); see also Efthimiou v. Smith, 268 Conn. 499, 504-05 (2004).  In Connecticut, a plaintiff pleads aiding and abetting by alleging that "(1) the party aided by the defendant performed a wrongful act; (2) the defendant generally was aware of his role as part of an illegal or tortious activity at the time he

provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." <u>In re Colonial Ltd. P'ship Litig.</u>, 854 F. Supp. 64, 102-03 (D. Conn. 1994). "In order to even consider a cause of action for aiding and abetting, the Court must first weigh whether there is any underlying 'illegal or tortious activity.' A civil action of aiding and abetting cannot stand alone and depends upon the existence of a valid underlying cause of action." <u>Fink</u>, 988 F. Supp. at 72. Although the Connecticut Supreme Court has not specifically addressed the issue of whether aiding and abetting common-law fraud is a cause of action in Connecticut, lower Connecticut courts have allowed plaintiffs to state causes of action for aiding and abetting common-law fraud. <u>See, e.g.,</u> <u>Brunette v. Bristol Sav. Bank</u>, No. CV 92-0453957S, 1994 WL 468448, at *2 (Conn. Super. Ct. Aug. 22, 1994); <u>F.D.I.C. v. Romaniello</u>, No. CV 92-0294248, 1992 WL 369557, at *2 (Conn. Super. Ct. Dec. 3, 1992).

The court has already found that there are sufficient facts alleged in the Amended Complaint to satisfy the underlying cause of action here, i.e., fraud. Given the fact that Plaintiff alleges that Anthony and Owen Flannery worked in concert to perpetrate their fraud upon Axelrod, the court finds that, under Connecticut law, a valid claim for aiding and abetting fraud exists for these two Defendants. Both Anthony and Owen Flannery

-14-

are alleged to have defrauded Axelrod in a common scheme.
Therefore, taking the Amended Complaint's allegations as true,
they both committed wrongful acts, knew that their acts were
wrongful, and aided each other in the commission of the fraud.
The Amended Complaint further alleges that Anthony and Owen
Flannery were members and managers of the third Defendant in this
case, Flannery Enterprises.  Thus, taking as true the Amended
Complaint's allegations in which Anthony and Owen Flannery used
Flannery Enterprises to aid them in the alleged fraud, Flannery
Enterprises also faces potential liability for aiding and
abetting fraud for the same reasons as Anthony and Owen Flannery
do.  Consequently, the court finds that the Amended Complaint
alleges facts that could constitute aiding and abetting fraud
under Connecticut law.

### b. Sufficiency Under Rule 9(b)

Although the Amended Complaint sufficiently sets forth facts
that may constitute both fraud and aiding and abetting fraud
under Connecticut law, it must still satisfy the federal pleading
requirements of Rule 9(b).  See Lomaglio Assocs. Inc., 892 F.
Supp. at 94.  The heightened pleading standard for fraud under
Rule 9(b) is necessary to put a defendant on notice of the
specific fraudulent acts that the plaintiff alleges.

The court finds that the Amended Complaint does not satisfy
the requirements of Rule 9(b).  The Amended Complaint does not

detail any affirmative statements made by the Defendants, let alone detail fraudulent statements. That is to say, the Amended Complaint contains no specifics (i.e., the who, what, when, and where) of any particular misrepresentations made to Axelrod. There are no allegations in the Amended Complaint that one of the Defendants made a misrepresentation to Axelrod for the purpose of defrauding Axelrod.

The lack of an affirmative misrepresentation is not necessarily fatal, though, as "omissions" are substitutes for "statements" under Rule 9(b). Indeed, Plaintiff's fraud claims seem based, in part, on an omission theory, and Connecticut recognizes causes of action for either fraudulent intentional withholding of information or, in special circumstances, fraudulent nondisclosure. But the Amended Complaint, even in the context of omissions, must detail what the omissions were, who was responsible for the failure to disclose, the context of the omissions and the manner in which they misled Axelrod, and what the Defendants obtained through the fraud. See Odyssey Re (London) Ltd., 85 F. Supp. 2d at 293. The Amended Complaint does not sufficiently do this. In addition, certain language in the Amended Complaint indicates that Plaintiff is asserting that Anthony and Owen Flannery made affirmative misrepresentations to Axelrod. For example, Plaintiff alleges that Axelrod relied on "the false view of the circumstances in which Tojak and [JBTR]

were made to operate by Anthony Flannery and Owen Flannery."
(Am. Compl. ¶ 31.)  The Amended Complaint does not recount,
however, any instances of Anthony and Owen Flannery making false
business reports to Axelrod, i.e., it does not tell how Anthony
and Owen Flannery conveyed this "false view of the circumstances"
to Axelrod.  Plaintiff needs to flesh out the alleged fraudulent
conduct in order to plead with particularity.

The Amended Complaint is also insufficient because it
alleges fraudulent conduct by the three individual Defendants but
does not assign specific conduct to each Defendant.  "Where
multiple defendants are asked to respond to allegations of fraud,
the complaint should inform each defendant of the nature of his
alleged participation in the fraud."  DiVittorio v. Equidyne
Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); see
N.Y. Transp., Inc. v. Naples Transp., Inc., 116 F. Supp. 2d 382,
386 (E.D.N.Y. 2000) ("[I]n cases with multiple defendants, Rule
9(b) requires that the complaint allege facts that specify each
defendant's connection to the fraud.") (internal quotation marks
omitted).  "Rule 9(b) is not satisfied where the complaint
vaguely attributes the alleged fraudulent statements to
'defendants.'"  Mills v. Polar Molecular Corp., 12 F.3d 1170,
1175 (2d Cir. 1993); see N.Y. Transp., Inc., 116 F. Supp. 2d at
386 ("General allegations against a group of defendant[s] are
insufficient.") (internal quotation marks omitted).

Although here the Amended Complaint often uses the specific names of Defendants Anthony and Owen Flannery, it invariably pairs Anthony Flannery with Owen Flannery as if they never left each other's side. Indeed, with regard to Count One, which is the fraud claim, Anthony and Owen Flannery are treated separately only in Paragraphs 2 and 3, which are merely for identification purposes. None of the remaining paragraphs in Count One that mention Anthony and Owen Flannery have Anthony Flannery acting separately from Owen Flannery. (See Am. Compl. ¶¶ 5, 10, 11, 12, 13, 14, 16, 17, 18, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31.) With the exception of Paragraph 4, which is also only for identification purposes, all the paragraphs in Count One that allege wrongful conduct by Flannery Enterprises do not have Flannery Enterprises acting separately from Anthony and Owen Flannery. (See Am. Compl. ¶¶ 25, 26, 27.) That is to say, even though the Amended Complaint uses the specific names of the Defendants, Count One does not distinguish either the conduct of Anthony Flannery from that of Owen Flannery, or the conduct of Flannery Enterprises from that of Anthony and Owen Flannery. Thus, by not separating the Defendants from each other, the Amended Complaint has, in effect, alleged fraud against "defendants" in general. In addition, some of the paragraphs in Count One actually refer only generally to "defendants." (See Am. Compl. ¶¶ 19, 20, 29, 33.) Therefore, the Amended Complaint

fails to inform each defendant of the specific nature of his alleged participation in the fraud. Consequently, the Amended Complaint does not satisfy the requirements of Rule 9(b), and the court must dismiss Count One.

Counts Three, Four, and Five, which are the aiding and abetting fraud claims, must also be dismissed pursuant to Rule 9(b). These counts, which contain general statements about how each of the Defendants assisted the other Defendants in the alleged fraud, rely solely on the factual assertions contained in Count One. Thus, they contain no additional, particular facts that would satisfy the requirements of Rule 9(b). Consequently, the court must dismiss Counts Three, Four, and Five as well.

### c. Opportunity to Re-plead

The Defendants ask the court to dismiss Plaintiff's fraud counts without leave to re-plead because, in the Defendants' view, Plaintiff has been given "ample opportunity" to do so. The court disagrees. "Plaintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint." Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp., 136 F.3d 273, 276 (2d Cir. 1998). As the Defendants point out, Plaintiff has already had one opportunity to file an amended complaint. Nevertheless, in circumstances where plaintiffs "specifically request leave to amend in the event that the court is inclined to dismiss on Rule 9(b) grounds,

the failure to grant leave to amend is an abuse of discretion unless the plaintiff has acted in bad faith or the amendment would be futile." Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001); see Vess, 317 F.3d at 1108 ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. [L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.") (internal quotation marks omitted). Plaintiff has indicated that if the court finds Plaintiff's fraud claims lacking, it will re-plead those claims. The court shall allow Plaintiff to do so.

The Defendants cite to cases in which the Second Circuit upheld the district court's denial of leave for the plaintiffs to further amend their complaints. See Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983); DeJesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65 (2d Cir. 1996). Those cases are distinguishable from the case here, for in Armstrong the plaintiffs sought a fourth chance to plead fraud with particularity, and in DeJesus the plaintiffs sought a fifth chance to do so. So, even though the court believes that plaintiffs not ought to amend their complaints ad infinitum, the court does not find that this case has reached the point where allowing Plaintiff to amend its claims would be an

excessive indulgence.[1]  The Defendants have not otherwise argued
that Plaintiff has acted in bad faith, or that a further amending
of Plaintiff's fraud claims would be futile.  Therefore, the
court grants the Defendants' motion with regard to Plaintiff's
fraud and aiding and abetting fraud claims and dismisses Counts
One, Three, Four, and Five without prejudice.

### B. RULE 12(B)(6)

#### 1. Standard

When considering a Rule 12(b)(6) motion to dismiss, the
court accepts as true all factual allegations in the complaint
and draws inferences from these allegations in the light most
favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232,
236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).
Dismissal is warranted only if, under any set of facts that the
plaintiff can prove consistent with the allegations, it is clear
that no relief can be granted.  See Hishon v. King & Spaulding,
467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d
Cir. 1998).  "The issue on a motion to dismiss is not whether the

---

[1]The Defendants argue that they should not be forced to continue
defending this case "after three tries."  According to the Defendants, the
"first" try was a November, 2002 lawsuit; the "second" try was a bankruptcy
investigation; the "third" try is this case.  The court rejects this argument.
To begin with, for the purposes of a Rule 9(b) motion to dismiss, the court
normally looks only to the complaint, not to outside materials.  Indeed, the
impetus for filing a Rule 9(b) motion to dismiss is to challenge a complaint
on its face, i.e., that the complaint does not plead fraud with particularity.
The Defendants here seem to want the court to find that Plaintiff is somehow
estopped from presenting its claims, but that is not the purpose of a Rule
9(b) motion.  In addition, the "three tries" to which the Defendants refer,
although possibly related to the present action, are proceedings that occurred
outside the immediate framework of this case, not "amendments" to Plaintiff's
Complaint or Amended Complaint.

plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232).  In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

### 2. EXTRINSIC EVIDENCE

#### a. Background

In their motion to dismiss, the Defendants rely upon certain evidence that was not included or referenced in the Amended Complaint.  The Defendants attached various exhibits (Exhibits A through L), which they call "the uncontrobertible [sic] record," to the affidavit of the Defendants' counsel in support of the motion. The Defendants claim that this record demonstrates that all of the Plaintiff's claims are time-barred by the relevant Connecticut statues of limitation; specifically, the Defendants allege that this extrinsic evidence shows that Axelrod was aware of all the alleged facts and circumstances alleged by the Plaintiff here.  This record includes: (1) a Proposed Complaint with the title caption <u>Jack Axelrod v. Tojak, Inc. Et Al.</u>; (2) a Notice of Ex Parte Pre-Judgment Remedy; (3) portions of the

deposition of Attorney Sharon Peters[2] taken in the case of
<u>Axelrod v. Peters</u>; (4) an affidavit of Axelrod in the case
<u>Axelrod v. Tojak, Inc.</u>; (5) a letter sent from Attorney Peters to
Attorney William Borchert, dated December 18, 2002; (6) a letter
from Attorney Peters to Attorney Borchert, dated December 23,
2002; (7) a Withdrawal filed in <u>Axelrod v. Tojak, Inc.</u>, which
withdrew that case as against Anthony Flannery; (8) a Withdrawal
filed in <u>Axelrod v. Tojak, Inc.</u>, which withdrew that case as
against Owen Flannery; (9) portions of the deposition testimony
of Anthony Flannery taken in the bankruptcy matter entitled <u>In</u>
<u>Re: Tojak, Inc.</u>, No. 03-30229 (ASD) (Bankr. D. Conn.); (10) a
Proof of Claim filed by Axelrod in the bankruptcy matter entitled
<u>In Re John & Bob's Towing & Recovery, Inc.</u>, No. 03-30230 (LMW)
(Bankr. D. Conn.); and (11) a letter of intent from Anthony
Flannery and Owen Flannery to Joseph Carey, dated May 1, 2002.

b. Standard for Use of Extrinsic Evidence

As noted above, the court, when ruling on a motion to
dismiss, may only consider the facts alleged in the pleadings,
documents attached as exhibits or incorporated by reference in
the pleadings, or matters of which the court may take judicial
notice.  <u>Samuels</u>, 992 F.2d at 15.  "'[W]hen matters outside the
pleadings are presented in . . . a 12(b)(6) motion,' a district
court must either 'exclude the additional material and decide the

---

[2]Attorney Peters is, apparently, one of Axelrod's former attorneys.

motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000) (quoting <u>Fonte v. Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir.1988)). "This conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on the motion." <u>Id.</u> "Thus, a district court errs when it consider[s] affidavits and exhibits submitted by defendants . . . or relies on factual allegations contained in legal briefs or memoranda . . . in ruling on a 12(b)(6) motion to dismiss." <u>Id.</u> at 83-84 (internal quotation marks and citations omitted). Indeed, as the Second Circuit has noted, "Vacatur is required even where the court's ruling simply mak[es] a connection not established by the complaint alone or contains an unexplained reference that raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion." <u>Id.</u> at 84 (internal quotation marks omitted).

It is true, as the Defendants point out, that "on a motion to dismiss a court may consider [certain extrinsic] materials notwithstanding Rule 12(b)'s conversion requirement." <u>Global Network Commc'ns, Inc. v. City of New York</u>, 458 F.3d 150, 156 (2d Cir. 2006). The extrinsic evidence that the court may

-24-

consider on a motion to dismiss without having to treat the
motion as one for summary judgment is limited to materials that
are integral to the plaintiff's complaint or materials subject to
judicial notice.  See Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42, 47-48 (2d Cir. 1991) (holding that, for a 12(b)(6)
motion, a defendant may introduce material that is "integral to
the complaint," even if the complaint did not contain or
reference that material, "because plaintiff should not so easily
be allowed to escape the consequences of its own failure");
Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir. 1991)
(noting that the court "may also consider matters of which
judicial notice may be taken under Fed. R. Evid. 201.").

     With regard to materials that are integral to the
plaintiff's complaint, "a necessary prerequisite for that
exception is that the 'plaintiff rel[y] on the terms and effect
of [the] document in drafting the complaint . . .; mere notice or
possession is not enough.'"  Global Network Commc'ns, Inc., 458
F.3d at 156 (quoting Chambers v. Time Warner, Inc., 282 F.3d 147,
153 (2d Cir. 2002)).  As the Second Circuit has stated, in most
instances where this exception is recognized, "the incorporated
material is a contract or other legal document containing
obligations upon which the plaintiff's complaint stands or falls,
but which for some reason-usually because the document, read in
its entirety, would undermine the legitimacy of the plaintiff's

claim—was not attached to the complaint." Id. at 157.  The primary purpose of this exception is to "prevent[] plaintiffs from generating complaints invulnerable to rule 12(b)(6) simply by clever drafting."  Id.

With regard to materials subject to judicial notice, "'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  Id. (quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)).  Thus, although a defendant may support a motion to dismiss by using materials that may be considered "public records," such as testimony or affidavits given in another case, the court "may [take judicial notice] . . . only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion."  Id.  (internal quotation marks omitted).

c. Analysis of the Defendants' Extrinsic Evidence

At issue, then, is whether the materials submitted by the Defendants may be properly considered within the context of a Rule 12(b)(6) motion (i.e., the materials are exceptions to the conversion requirement).  If they are not exceptions to the conversion requirement, the court must decide whether to exclude altogether the evidence, or convert the Defendants' motion to one for summary judgment.

-26-

The court finds that the extrinsic evidence submitted by the Defendants does not fall within the "integral to the complaint" exception. First, the exhibits themselves are not contracts or legal documents containing the obligations upon which the Amended Complaint stands or falls. Second, the Defendants make no argument that the exhibits submitted with the motion to dismiss were otherwise integral to the drafting of the Amended Complaint. That is to say, there must be a demonstration that the Amended Complaint relied heavily on the terms and effect of the submitted materials. See Chambers, 282 F.3d at 153. There is no such demonstration here. Subsequently, the court will not consider such materials to fall under the "integral to the complaint" exception.

The court also finds that the Defendants' extrinsic evidence either does not fall under the "judicial notice" exception at all, or, if it does fall under the exception, is being used improperly at this stage in the case. First, not all of the submitted exhibits fall under the rubric of "public records" that are subject to the judicial notice exception. "[C]ourts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action." Moore U.S.A., Inc. v.

Standard Register Co., 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001).

Defendants' Exhibits F (the December 18, 2002 letter from

Attorney Peters to Attorney Borchert); G (the December 23, 2002

letter from Attorney Peters to Attorney Borchert); and L (the May

1, 2002 letter of intent from Anthony Flannery and Owen Flannery

to Joseph Carey) of the affidavit submitted with the Defendants's

motion clearly do not qualify as public records, and thus the

court will take no notice of them at this time.

As for the remainder of the Defendants' exhibits, the court

recognizes that, for the purposes of a Rule 12(b)(6) motion, it

could take notice of this evidence to establish certain facts,

such as the existence of prior court filings or lawsuits.  The

Defendants, though, ask the court to examine these materials and

make a finding as to Axelrod's awareness of particular facts and

circumstances at certain times.  Such an examination of these

materials, except Exhibit A,[3] is improper at this time.  With

regard to the these exhibits, the court does take notice of

existence of the other cases (and documents filed in relation to

those cases)that involve the parties and companies involved in

---

[3]Exhibit A is the Amended Complaint in this case, so the court will
examine and consider that exhibit.  Indeed, as noted above, the court, for the
purposes of a Rule 12(b)(6) motion, must accept as true all factual
allegations in the Amended Complaint and draw inferences from these
allegations in the light most favorable to Plaintiff.  See Scheuer, 416 U.S.
at 236.

this case,[4] and of the deposition testimony of Anthony Flannery and Attorney Peters.

The court will not, however, make any finding as to what Axelrod did or did not know based on these materials. First, to make such a finding would require the court to pore over the exhibits in order to determine the truth of the matters asserted in the various documents. As the Second Circuit has stated, such an examination of extrinsic evidence is not appropriate in the context of a motion to dismiss. See Global Network Commc'ns, Inc., 458 F.3d at 157 (holding that when the District Court used extraneous documents "not to establish their existence, but rather to provide the reasoned basis for the court's conclusion[,] . . . . [the] [a]nalysis of such material was . . . not appropriate under the judicial notice exception to the conversion requirement.").

Second, to determine when Axelrod knew or should have known about the facts that formed the basis of the alleged fraud raises an issue of fact, which may not be resolved here on a motion to

---

[4]The court notes, however, that even though the Defendants assert that a number of the exhibits are pleadings filed in other cases, none of these submissions appear to have a court file-stamp, although some exhibits have an attestation of the State Marshal. For example, Exhibit B, a document with the caption Jack Axelrod v. Tojak, Inc. et al., is titled "Proposed Complaint" and is unsigned (although the page titled "Statement of Amount in Demand," which is attached to Exhibit B, has Attorney Peters's signature and an attestation from the State Marshal). It is not clear to the court whether all these exhibits would fall under the "judicial notice" exception at all because it is not certain that all these documents were properly filed. If these documents were not filed with the clerk of the court, they would not be part of the public record as a "pleading."

dismiss.  See Marcus v. Frome, 329 F. Supp. 2d 464, 475 (S.D.N.Y. 2004) (holding that the defendants' contention that the plaintiffs' fraud claims were time-barred because the plaintiffs "knew or should have known of the facts constituting the alleged fraud . . . raise[d] issues of fact that cannot be resolved on a motion to dismiss."); Nelson v. Stahl, 173 F. Supp. 2d 153, 166 (S.D.N.Y. 2001) (holding that the court should not reach the issue of whether the plaintiffs were on inquiry notice of the defendants' fraud because "the question of whether Plaintiffs should have discovered the fraud earlier than they did, and thus whether the action is timely, is a question for the trier of fact.").  That is, even if the court were to examine fully the extrinsic evidence submitted by the Defendants, it would still be improper at this stage for the court to decide the question of whether Axelrod knew, or should have known, of all the facts that constitute the alleged fraud here.

The court finds, therefore, that, aside from Exhibit A, which is the Amended Complaint in this case, the exhibits submitted by the Defendants either do not fall under the exceptions to the conversion requirement at all, or, if they do fall under the exceptions, are impermissibly being used to demonstrate Axelrod's knowledge of the alleged fraud. Consequently, for the purposes of this motion to dismiss, the court will not use any of the Defendants' exhibits to determine

when Axelrod was aware of all the facts that constituted the fraud alleged here.

### 3. Conversion to Summary Judgment Motion

Under the Federal Rules of Civil Procedure, if, for a Rule 12(b)(6) motion to dismiss, "matters outside the pleading are presented to *and not excluded by* the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b) (emphasis added). "As indicated by the word 'shall,' the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is 'strictly enforce[d] and 'mandatory.'" Global Network Commc'ns, Inc., 458 F.3d at 155. The Defendants maintain that if the court decides that it cannot use the submitted extrinsic evidence for the purposes of this motion to dismiss, the court should convert the motion to one for summary judgment so that the court can examine the extrinsic evidence. The court, though, is not required to convert a Rule 12(b)(6) motion into a summary judgment motion so long as it excludes from consideration those materials that are not proper for a Rule 12(b)(6) motion. As the Second Circuit has stated, "Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6)

motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment." Kopec v. Coughlin, 922 F.2d 152, 154 (2d Cir. 1991) (internal quotation marks omitted). If the court decides to convert the motion, it must "afford all parties the opportunity to present supporting material." Id.

The court exercises its option to not consider the additional material submitted by the Defendants. The court can take judicial notice of certain exhibits, but such notice falls under the scope of Rule 12(b)(6). The court does not believe that Plaintiff has had either adequate notice that this motion to dismiss would convert into a summary judgment proceeding, or an adequate opportunity to present its own supporting material. In addition, even if the court were to convert the motion, the court would still afford both sides ample time for discovery so that the parties could submit evidence with their "supporting material." The court sees no point in converting the motion at this stage in the litigation. Consequently, the court shall decide the Defendants' motion to dismiss on the Amended Complaint alone.

### 4. Statute of Limitations Analysis

The Defendants argue that Plaintiff's claims fail as a matter of law because they are barred by the applicable statutes of limitations. A statute-of-limitations claim is an affirmative

defense, see Fed. R. Civ. P. 8(c), which is not normally considered on a motion to dismiss. Nevertheless, "[w]here the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989); see Velez v. City of New London, 903 F. Supp. 286, 289 (D. Conn. 1995) ("Although the statute of limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint.") (internal quotation marks omitted);

The court notes that all of Plaintiff's claims are subject to three-year statutes of limitations. In Connecticut, "[a]ll common law tort claims, including claims for fraud, negligent misrepresentation, and breach of fiduciary duty, are subject to [the] three-year statute of limitations [as set forth in Section 52-577 of the Connecticut General Statutes]." In re Colonial Ltd. P'ship Litig., 854 F. Supp. at 90; see Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."). Count Two (Interference with Contract) is thus

governed by § 52-577.[5]  See Collum v. Chapin, 40 Conn. App. 449,

451-52 (1996).  Count Six (Unfair Trade Practices) is subject to

the three-year statute of limitations specifically set forth for

CUPTA claims.  See Conn. Gen. Stat. § 42-110g(f) ("An action

under this section may not be brought more than three years after

the occurrence of a violation of this chapter.").

   "Section 52-577 [of the Connecticut General Statutes] is an

occurrence statute, meaning that the time period within which a

plaintiff must commence an action begins to run at the moment the

act or omission complained of occurs."  Collum, 40 Conn. App. at

451.  "The three year limitation period of § 52-577 begins with

the date of the act or omission complained of, not the date when

the plaintiff first discovers an injury."  Id.  The same standard

holds true for CUTPA's limitation period.  See Fichera v. Mine

Hill Corp., 207 Conn. 204, 212-13.  In certain circumstances,

however, Connecticut courts recognize the "continuing course of

conduct" doctrine, which tolls the limitations period.  See

Blanchette v. Barrett, 229 Conn. 256, 265 (1994).  As the

Connecticut Supreme Court has held,

> Under the "modern formulation" of the continuing course
> of conduct doctrine, [to] support a finding of a
> continuing course of conduct that may toll the statute
> of limitations there must be evidence of the breach of
> a duty that remained in existence after commission of

---

[5]The court notes that Counts One (Fraud) and Three through Five (Aiding
and Abetting Common-law Fraud) would have been subject to Conn. Gen. Stat. §
52-577 had they not been dismissed, with leave to re-plead, pursuant to Fed.
R. Civ. P. 9(b).

the original wrong related thereto. That duty must not
have terminated prior to commencement of the period
allowed for bringing an action for such a wrong. . . .
Where we have upheld a finding that a duty continued to
exist after the cessation of the "act or omission"
relied upon, there has been evidence of either a
special relationship between the parties giving rise to
such a continuing duty or some later wrongful conduct
of a defendant related to the prior act.

Zielinski v. Kotsoris, 279 Conn. 312, 322 (2006) (internal

quotation marks omitted).

The Defendants contend that the wrongful conduct[6] alleged

here occurred more than three years ago, and Plaintiff's claims

are thus time-barred.  Plaintiff counters the Defendants'

contention by arguing that, although much of the conduct alleged

here occurred over three years prior to the filing of this case,

the culmination of the Defendants' wrongful acts occurred within

the statute of limitations, and thus Plaintiff's claims are saved

by the "continuing course of conduct" doctrine.[7]

The court finds that by looking at the face of the Amended

Complaint in the light most favorable to Plaintiff, Plaintiff's

remaining claims can survive the Defendants' motion to dismiss.

Although much of the wrongful conduct alleged in the Amended

Complaint occurred more than three years prior to the filing of

this lawsuit, the Amended Complaint does set forth conduct that

_____

[6]The court notes that, in the Amended Complaint, Plaintiff supports all
of its claims with the same alleged conduct, i.e., there are no factual
allegations in the interference with contract claim that are separate or
distinct from the CUTPA claim, or vice versa.

allegedly occurred within the limitations period.  In fact,
Plaintiff alleges that the January 15, 2003 involuntary
bankruptcy, which is described in the Amended Complaint, was the
final wrongful act under the "continuing course of conduct"
doctrine.  In light of the fact that Connecticut law recognizes
the "continuing course of conduct" doctrine, and given that the
court must accept as true the facts alleged in the Amended
Complaint, it is not apparent, on the face of the Amended
Complaint, that Plaintiff's remaining claims are time-barred.
Consequently, the court denies the Defendants' motion with regard
Counts Two (Interference with Contract) and Six (CUTPA).

### III. CONCLUSION

For the reasons set forth herein, the Defendants' Motion to
Dismiss or, in the Alternative, Motion to Plead with Specificity
is **GRANTED in part and DENIED in part.**  To the extent that the
Defendants seek dismissal of Plaintiff's various common-law fraud
and aiding and abetting fraud claims for failure to conform with
Rule 9(b) **(dkt. # 18),** the Defendants' motion is **GRANTED in part.**
Counts One (Fraud), Three (Aiding and Abetting Fraud), Four
(Aiding and Abetting Fraud), and Five (Aiding and Abetting Fraud)
are **DISMISSED without prejudice, with leave to re-plead.  If
Plaintiff wishes to re-plead these claims, it must file a second
amended complaint on or before April 30, 2007.**  With regard to
Plaintiff's remaining claims, Count Two (Interference with

Contract) and Count Six (CUTPA), the Defendants' motion to dismiss on statute of limitations grounds **(dkt. # 15)** is **DENIED**.

      **SO ORDERED** this <u>12th</u> day of March, 2007.


                                         **/s/DJS**
                          **DOMINIC J. SQUATRITO**
                 **UNITED STATES DISTRICT JUDGE**